IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Ronnie Wallace, | ) | C/A No. 4:19-cv-02077-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Andrew Saul, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter comes before the Court on Defendant's Objections to the Magistrate Judge's Report and Recommendation ("Report"), which recommended reversing the decision of the Commissioner of Social Security ("Commissioner") and remanding the case to the Commissioner for further administrative proceedings consistent with the Court's ruling. ECF Nos. 22, 25.

## **BACKGROUND**

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner's final decision denying his claim for Disability Insurance Benefits ("DIB"). Plaintiff filed an application for DIB on July 24, 2015, alleging disability due to hand impairments, feet impairments, remission from stage 4 lymphoma, and thyroid disorder. (R. 78). Plaintiff's application was denied initially and on reconsideration. (R. 83, 94). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 23, 2018. (R. 32–76). The ALJ denied Plaintiff's application in a decision issued July 30, 2018. (R. 10–21). The Appeals Council

1

denied Plaintiff's request for review on June 4, 2019, making the ALJ's denial the final decision of the Commissioner. (R. 1–3).

Plaintiff filed suit in this Court on July 25, 2019. ECF No. 1. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to a United States Magistrate Judge for pre-trial handling. On November 3, 2020, Magistrate Judge Thomas E. Rogers, III, issued his Report recommending that the decision of the Commissioner be reversed and remanded. ECF No. 22. On November 17, 2020, the Commissioner filed Objections to the Report. ECF No. 25. Plaintiff filed a Reply on December 1, 2020. ECF No. 28. The Commissioner's Objections and the Magistrate Judge's Report are now before the Court.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act ("the Act") is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebreeze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review

2

of the factual circumstances that substitutes the court's findings for those of the Commissioner.  *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).  The court must uphold the Commissioner's decision as long as it was supported by substantial evidence and reached through the application of the correct legal standard.  *Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005).  "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted.  The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action."  *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969).  "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational."  *Vitek*, 438 F.2d at 1157–58.

## **DISCUSSION**

The Magistrate Judge recommended that the Court reverse and remand the Commissioner's decision because the ALJ failed to resolve inconsistencies in the evidence relating to Plaintiff's fatigue.  ECF No. 22.  Upon review, the undersigned agrees with the Magistrate Judge's recommendation to reverse and remand, but does so on the alternative basis that the ALJ did not properly apply the treating physician rule in evaluating the opinion of Dr. Newman.  *See* ECF No. 11 at 17–20.

Dr. Newman, Plaintiff's treating oncologist, provided the following opinion dated January 30, 2018:

> Mr. Wallace (DOB 11/25/1964) has been under my medical care since 2012 for his lymphoma.  He received chemotherapy and has experienced ongoing fatigue and vincristine-induced peripheral neuropathies since completion of his treatment.  His manual dexterity, ability to concentrate, and general activity tolerance has been significantly impacted.  These symptoms have not resolved, or improved with medication, and

3

unfortunately appear to be chronic and permanent.  This has significantly limited his activities and I do not foresee that he will be able to return to work.

(R. 363).  This letter was accompanied by a detailed Physician Statement describing Plaintiff's symptoms and functional limitations.  (R. 364–67).  Dr. Newman opined, inter alia, that Plaintiff suffered from ongoing peripheral neuropathy and chronic fatigue following his cancer treatment; that Plaintiff could reasonably stand or walk for zero hours over an eight-hour work day; that Plaintiff had limited ability to push, pull, grip, handle, or manipulate objects; that neuropathy in his hands and feet limited Plaintiff's abilities to safely lift or carry objects; that Plaintiff could only occasionally lift zero to five pounds; that Plaintiff could sit upright for two hours over an eight-hour workday; and that Plaintiff would require frequent breaks and the ability to function at his own pace as workplace accommodations.  (R. 364–67).

The ALJ weighed Dr. Newman's opinion as follows:

The undersigned gives limited weight to the opinions of Dr. Newman at Exhibit 7F.  Dr. Newman's opinions are not consistent with the record as a whole.  First, the determination of whether the claimant is able to work is reserved to the Commissioner.  Objective evidence of record, including examination findings, discussed herein, and consistently benign mental examination findings in treatment notes of record during the period relevant to this decision, does not support Dr. Newman's statement that the claimant's manual dexterity, ability to concentrate, and general activity tolerance have been significantly impacted.  Furthermore, specific functional limitations in Dr. Newman's opinion, such as ability to stand and walk for zero hours and lift zero to five pounds occasionally, are not consistent with the record as a whole, including 5/5 strength and normal sensation noted in treatment notes of Dr. James on September 24, 2015, lack of objective evidence of neurological or strength deficits in records from the claimant's medical providers from Novant Health, including Dr. Newman, during the period relevant to this decision, and the claimant's own

4

> report on January 31, 2016 that he could sit for "8+" hours per day (e.g., Exhibits 8E, 2F, and 25F).

(R. 18).

For claims filed before March 27, 2017, the ALJ must apply the following standard, commonly known as the "treating physician rule":

> If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2). The regulation further provides that the Commissioner "will always give good reasons . . . for the weight we give your treating source's medical opinion." *Id*. A treating physician's opinion "*must* be given controlling weight *unless* it is based on medically unacceptable clinical or laboratory diagnostic techniques or is *contradicted* by the other substantial evidence in the record." *Arakas v. Comm'r, Soc. Sec. Admin.*, ___ F.3d ___, 2020 WL 7331494, at *32 (4th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987)) (emphasis in original).[1] The Court finds that the ALJ erred in applying the treating physician rule to Dr. Newman's opinion because she failed to provide "good reasons" for giving it limited, rather than controlling, weight. *See* 20 C.F.R. § 404.1527(c)(2).

First, although it is certainly true that "the determination of whether the claimant is able to work is reserved to the Commissioner," (R. 15), this fact has no bearing on the

---

[1] In a prior unpublished decision, the Fourth Circuit held that *Coffman*'s holding regarding the treating physician rule was superseded by 20 C.F.R. § 404.1527. *See Stroup v. Apfel*, 205 F.3d 1334 (Table), 2000 WL 216620, at *4–5 (4th Cir. 2000). This Court is bound by the more recent published authority of *Arakas*, which applies the *Coffman* rule as consistent with § 404.1527.

weight to be given to Dr. Newman's detailed and specific medical opinion of Plaintiff's limitations.

Second, the ALJ's finding that various other "[o]bjective evidence of record[2] . . . does not support" Dr. Newman's opinions regarding Plaintiff's manual dexterity, ability to concentrate, and general activity tolerance represents an inversion of the treating physician rule.  There is no requirement that other substantial evidence of record *support* the opinion of the treating physician; rather, the ALJ must evaluate whether other substantial evidence of record *contradicts* that opinion.  *Arakas*, 2020 WL 7331494, at *32 (a treating physician's opinion "*must* be given controlling weight *unless* it is . . . *contradicted* by the other substantial evidence in the record").[3]  The fact that other evidence did not support Dr. Newman's opinion was not a proper reason to assign it less than controlling weight.  *See Arakas*, 2020 WL 7331494, at *32 (holding that the ALJ applied an incorrect legal standard by "reason[ing] that the 'lack of substantial support from the other objective evidence of record' rendered Dr. Harper's opinion 'less persuasive[.]'").  Similarly, the ALJ's finding of a "lack of objective evidence of neurological or strength deficits in records from the claimant's medical providers from Novant Health" was not a finding of inconsistency between Dr. Newman's opinion and the other

---

[2] It is not entirely clear what comprises this "[o]bjective evidence of record."  The ALJ noted that the evidence "includ[ed] examination findings, discussed herein, and consistently benign mental examination findings in treatment notes of record during the period relevant to this decision," (R. 15), but did not specify any particular records.  Moreover, it is not clear how "benign mental examination findings" would contradict Dr. Newman's opinion that Plaintiff is limited by his peripheral neuropathy and chronic fatigue.

[3] Because the ALJ did not find that Dr. Newman's opinion was "based on medically unacceptable clinical or laboratory diagnostic techniques," the Court need only consider whether Dr. Newman's opinion was contradicted by other substantial evidence in the record.  *See Arakas*, 2020 WL 7331494, at *32.

6

substantial evidence of record and, therefore, was not a proper basis for rejecting his opinion. (R. 18).

Third, the ALJ did not adequately explain how the exam findings of Dr. Scott James, III, on September 24, 2015, conflicted with Dr. Newman's opinion. The ALJ specifically referenced Dr. James' findings of "5/5 strength and normal sensation." (R. 18). Dr. James found 5/5 strength of the hamstring, quadriceps, hip flexors, and plantar flexion gastrocnemius, as well as normal sensation at the L5, S1, T12, L1, L2, L3, L4, S2, S3, S4, and S5 vertebrae. (R. 286–87). The ALJ did not explain, however, how these findings contradicted Dr. Newman's later findings of fatigue and vincristine-induced peripheral neuropathies or his opinion of limited ability to push, pull, grip, handle, manipulate, lift, or carry objects. Peripheral neuropathy occurs as a result of "damage to the nerves *outside* of the brain and spinal cord" (emphasis added) and causes "weakness, numbness and pain, usually in [the] hands and feet." Mayo Clinic, *Peripheral Neuropathy Overview* (May 22, 2019), https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/ symptoms-causes/syc-20352061. It is not readily apparent that Dr. James' findings of normal sensation of the spinal vertebrae, or of 5/5 strength in various parts of the leg, contradict Dr. Newman's opinion regarding Plaintiff's peripheral neuropathy. At the very least, further explanation was needed to enable the Court to follow the ALJ's reasoning. It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Because the ALJ in this instance failed to do so, Dr. James' findings of sensation and strength did not constitute a "good reason" for rejecting the opinion of Dr. Newman.

Fourth, the ALJ found Plaintiff's self-reported ability to "sit for '8+' hours per day" inconsistent with Dr. Newman's finding that Plaintiff could "stand and walk for zero hours and lift zero to five pounds occasionally." (R. 18). There is, of course, no apparent relation between the referenced findings—which relate to standing, walking, and lifting—and Plaintiff's ability to sit for eight or more hours per day. The undersigned infers that the ALJ may, instead, have intended to refer to Dr. Newman's opinion that Plaintiff could "sustain upright sitting" for only two hours in an eight-hour workday. (R. 367). Even in light of this inference,[4] however, the alleged inconsistency was not so clear as to relieve the ALJ of her burden to "build an accurate and logical bridge" to her conclusion. *See Monroe*, 826 F.3d at 189. Plaintiff indeed stated in early 2016, two years prior to Dr. Newman's letter and functional assessment, that he could sit for "8+ hours a day." (R. 212). However, Plaintiff did not address his ability to "sustain upright sitting over an eight hour workday." (R. 367). Neither did he specify whether the eight or more hours of sitting could be continuously sustained or would have to be broken up over the course of an entire day. Plaintiff did indicate, in a statement from September 20, 2015, that his conditions affected his ability to sit. (R. 196). The Court does not find that Plaintiff's single statement that he was able to sit for "8+ hours a day," without more, constituted substantial evidence in contradiction of Dr. Newman's opinion.

Finally, to the extent that the ALJ's treatment of Dr. Newman's opinion was influenced by her concerns about "manipulation regarding the opinion evidence," (R. 18), this was not a proper reason to give the opinion less than controlling weight. As an initial

---

[4] Because the ALJ's explanation was inadequate even in light of this inference, the Court does not reach the question of whether it is proper to make such an inference in the first place.

8

matter, the purported manipulation was not listed as a reason for the weight assigned to Dr. Newman's opinion.  *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").  More importantly, it does not appear that there exists any significant record evidence of manipulation or other impropriety.  The ALJ noted only that Plaintiff was "disappointed" with the statement of Robert L. Stevens, M.D., which was later withdrawn to reflect "that up to date information from another medical provider may more accurately reflect the claimant's current condition," and that Plaintiff called and asked to speak with the provider in charge of drafting Dr. Newman's letter.  (R. 17–18).  The Court finds that these circumstances do not rise to the level of record evidence of opinion manipulation.  Where no such evidence exists, adjusting the weight assigned to a treating physician's opinion contravenes the treating physician rule.  *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995); *Foxman v. Barnhart*, 157 F. App'x 344, 347 (2d Cir. 2005).

The Commissioner's objections are sustained as they relate solely and specifically to the ALJ's failure to resolve inconsistencies in the evidence relating to Plaintiff's fatigue.  However, they are overruled in all other respects.  Because the ALJ applied an incorrect legal standard in weighing the opinion of Dr. Newman, the decision of the Commissioner must be reversed.

## CONCLUSION

For the reasons set forth above, the Court **ADOPTS** the factual findings and ultimate recommendation of the Report[5] and **REVERSES** the decision of the

---

[5] The legal findings of the Report, as discussed herein, are not adopted.

9

Commissioner. This case is hereby **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion.

    IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.<br>United States District Judge

January 6, 2021  
Spartanburg, South Carolina